Argued and submitted March 7, at the University of Oregon School of Law, Eugene, Oregon; decision of Court of Appeals and judgment of circuit court affirmed October 10, 2019

STATE OF OREGON,
*Respondent on Review,*

*v.*

KALISTA RENE HARRISON,
*Petitioner on Review.*

(CC 14CR1504MI) (CA A159491) (SC S066132)

450 P3d 499

Defendant was convicted of violating ORS 166.250(1)(b), which provides that a person commits the crime of unlawful possession of a firearm if the person knowingly "[p]ossesses a handgun that is concealed and readily accessible to the person within any vehicle." The Court of Appeals affirmed the conviction. On review, defendant argued that the evidence was insufficient to support a finding that her handgun was "concealed" for purposes of the statute. Defendant also argued that the trial court erred by declining to issue defendant's requested jury instruction. *Held*: (1) Under ORS 166.250(1)(b), a handgun is "concealed" in a vehicle if the placement of the gun would fail to give reasonable notice of the gun's presence, through ordinary observation, to a person actually coming into contact with the occupants of the vehicle and communicating in the manner typical of such a contact; (2) the evidence was sufficient to support a finding that defendant's handgun was "concealed" in her vehicle, where witnesses testified that the gun was tucked into the interior pocket of the driver's side door and would not have been observable by a person standing outside the vehicle and communicating with the occupants through the driver's side window; and (3) the trial court did not err in declining to issue defendant's requested jury instruction, where the instruction that the trial court gave was legally correct and differed only slightly from defendant's requested instruction.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

En Banc

On review from the Court of Appeals.*

Sarah Laidlaw, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Keith L. Kutler, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

GARRETT, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---------------

* On appeal from Douglas County Circuit Court, William Marshall, Judge. 292 Or App 232, 423 P3d 736 (2018).

**GARRETT, J.**

This case requires us to construe the term "concealed" for purposes of ORS 166.250(1)(b),[1] which provides that a person commits the crime of unlawful possession of a firearm if the person knowingly "[p]ossesses a handgun that is concealed and readily accessible to the person within any vehicle[.]"

The relevant facts are few and undisputed. A police officer, Hopkins, initiated a traffic stop of defendant for reasons that are not relevant on review. As Hopkins approached defendant's stopped vehicle, defendant stepped out of the car, left the driver's side door open, and began walking away. Hopkins followed her on foot. Meanwhile, Officer Barrett arrived at the scene. In observing the open driver's side door, Barrett saw the upper handle and cylinder of a handgun tucked barrel-down in the door's interior pocket, which was located below the window and armrest and lower than the level of the driver's seat. According to testimony from Hopkins, the handgun would have been readily accessible to the driver and not visible "when the door was closed when there was a driver in the driver's seat and the vehicle was traveling down the road." Defendant was charged with violating ORS 166.250(1)(b).[2]

At trial, defendant moved for a judgment of acquittal (MJOA), arguing that the handgun was not "concealed" within the meaning of the statute. The trial court denied that motion. Defendant also requested that the trial court give a special jury instruction concerning the definition of "concealed." The trial court declined to issue defendant's requested instruction and gave a different instruction, which will be discussed below. Defendant was convicted,

_____

[1] The version of ORS 166.250 in effect at the time of defendant's crime has since been amended but the amendments do not affect the analysis in this case. Accordingly, we cite the current version of the statute.

[2] ORS 166.250 provides, in pertinent part:

"(1) Except [in circumstances not relevant here], a person commits the crime of unlawful possession of a firearm if the person knowingly:

"*****

"(b) Possesses a handgun that is concealed and readily accessible to the person within any vehicle[.]"

and the Court of Appeals affirmed. We allowed review as to both rulings and now affirm.

We begin with defendant's MJOA. Before the Court of Appeals, defendant advanced two arguments as to why the trial court should have granted her motion. First, defendant argued that, by the time Officer Barrett saw the gun, defendant had left the car door open "and did not attempt to shut it, permitting the officers and any onlookers to see the gun." *State v. Harrison*, 292 Or App 232, 236, 423 P3d 735 (2018) (internal quotation marks omitted). The Court of Appeals rejected that argument, reasoning that

> "the question for purposes of the motion for judgment of acquittal is whether the gun was concealed *at some point*. In other words, if there is evidence that the gun was concealed while the door to the vehicle was closed, the fact that the gun was revealed when the door was opened would not be reason to take the case from the jury."

*Id.* (emphasis in original).

Defendant's second argument was that the state had failed to produce evidence that, when the vehicle door was closed, the handgun could not have been seen from ordinary vantage points, including by a person "standing next to defendant's closed vehicle door." *Id*. The Court of Appeals again disagreed, concluding that the evidence regarding the location of the door's interior pocket

> "below the level of the driver's seat and below the window and armrest, *** along with Hopkins's affirmative response when asked whether the gun would not have been visible when the door of the vehicle was closed and it was being driven down the road, supports a finding that the gun was shielded from the vision or notice of a person approaching the driver from outside the vehicle and—in the context of this encounter—was 'concealed.'"

*Id.* at 236-37.

On review, defendant takes issue with the Court of Appeals' construction of the word "concealed," and specifically with that court's emphasis on whether a handgun was concealed "at some point." In defendant's view, that phrase, combined with the court's reliance on Hopkins's testimony

that the gun would not have been visible while the car was "being driven down the road," suggests a very broad construction of "concealed" that would criminalize more conduct than the legislature intended. That is, if the court's construction can be understood to apply to any handgun that becomes even momentarily hidden from the view of another person, including a person outside the car while the car is in motion, then virtually all handguns in vehicles would fit the definition of "concealed," no matter how openly displayed.[3]

To avoid such problems, defendant proposes that "concealed" in ORS 166.250(1)(b) should be understood to mean "keeping a handgun in a location in a vehicle as a means of making it not visible or recognizable from an ordinary vantage of a person in an ordinary interaction with the defendant." Under her definition, defendant explains, a person would be permitted to possess a readily accessible handgun anywhere in a vehicle where the gun reasonably can be seen from at least one ordinary vantage point, even if the gun is not observable from other ordinary vantage points. Defendant also urges us to interpret "concealed" to require an *intention* to make the handgun difficult or impossible to observe. If one accepts her definition, defendant argues, she should have been acquitted because the state failed to prove that an ordinary observer could not have seen the handgun from any vantage point, and because the state further failed to prove that the handgun was placed in such a way that indicated an intention to hide it.

The state, in contrast, argues that a handgun is "concealed" under ORS 166.250(1)(b) if it is "shielded from the vision of some persons who are in contact with, or who may come into contact with, the vehicle," and that the handgun "does not have to be completely hidden from the view of all persons other than the one who possesses it." In the

---

[3] Defendant also suggests that the interpretation of ORS 166.250(1)(b) adopted by the Court of Appeals, as she characterizes that interpretation, "could unlawfully infringe on the people's constitutional rights to carry weapons in self-defense." However, as explained below, 365 Or at 589, we give the term "concealed" a narrower meaning than that which defendant ascribes to the Court of Appeals opinion. Defendant does not argue that ORS 166.250(1)(b) is facially unconstitutional and does not develop an argument that would suggest that our ultimate interpretation of ORS 166.250(1)(b), discussed below, would violate the Oregon or federal constitution.

state's view, a handgun in a vehicle is concealed if it is not "discernible by ordinary observation" to at least some people who may come into contact with the vehicle. Defendant responds that the state's definition, like her characterization of the Court of Appeals' construction, is unreasonably broad in that it would seem to mean that a handgun displayed openly within a vehicle would be "concealed" because it would not be observable from various vantage points outside the vehicle.

As explained below, we do not agree with either party's definition. We conclude that, in the context of ORS 166.250(1)(b), the legislature intended that a handgun is "concealed" in a vehicle if the placement of the gun would fail to give reasonable notice of the gun's presence, through ordinary observation, to a person actually coming into contact with the occupants of the vehicle and communicating in the manner typical of such a contact—such as through an open window. So understood, the evidence in this case was sufficient to support a finding that defendant's gun was "concealed."

The issue before us is one of statutory interpretation. Accordingly, we consider the text, context, and any relevant legislative history under the familiar methodology articulated in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

We begin with the statutory text. ORS 166.250(1)(b) provides, in relevant part:

"(1)   * * * [A] person commits the crime of unlawful possession of a firearm if the person knowingly:

"* * * * *

"(b)   Possesses a handgun that is concealed and readily accessible to the person within any vehicle[.]"

The legislature did not define "conceal" for purposes of ORS 166.250. Because that term is a word of common usage, we presume that the legislature intended that it be given its ordinary meaning. *Gaines*, 346 Or at 175; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). The ordinary meaning of "conceal" is to

"prevent disclosure or recognition of," "withdraw from being observed," or "shield from vision or notice." *Webster's Third New Int'l Dictionary* 469 (unabridged ed 2002). Thus, the verb "conceal" refers to actions taken that cause something to be unrecognized or obscured from view, while "concealed," in its adjectival form, describes an object with respect to which those actions have been taken.

In short, under the word's ordinary meaning, an object presumably is "concealed" if someone has caused another person to fail to notice the object by causing it to be reasonably (even if not completely) indiscernible, including by obstructing the person's view of the object or making it less recognizable.

Defendant does not take issue with that understanding, as far as it goes. However, she asserts that the common meaning of "concealed" also includes a limitation: the word refers only to acts performed for the *purpose* of causing failures to notice an object. In support of that proposition, defendant relies on the definitions quoted above as well as earlier dictionaries from around the time that Oregon's first concealed-weapons statute was enacted, which define the term "concealed weapons" as "dangerous weapons so carried on the person as to be *knowingly or willfully* concealed from sight." *1910 Webster's New International Dictionary of English Language* 461 (reference history ed) (emphasis added); *see also 1891 Black's Dictionary of Law* 241 ("'concealed weapons' means weapons *willfully or knowingly* covered or kept from sight" (emphasis added)).

Those dictionary definitions offer some support for defendant's contention that, in ordinary usage, the term "concealed" can connote an element of willfulness and design; on the other hand, the references to "knowingly" imply a lesser mental state and suggest that an object can be considered "concealed" if a person acted with knowledge that the object would not be discoverable, regardless of whether the person had the *purpose* of preventing discovery. Of course, "dictionaries are only the starting point for our textual analysis." *State v. Gonzalez-Valenzuela*, 358 Or 451, 462, 365 P3d 116 (2015) (internal quotation marks omitted); *see also State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234, 1249 (2011)

("Dictionaries, after all, do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used." (Emphasis in original.)). The question is what the legislature meant by "concealed" in the specific context of ORS 166.250.

Earlier versions of Oregon's concealed-weapons laws provide context for understanding ORS 166.250. *See State v. Briney*, 345 Or 505, 512, 200 P3d 550 (2008) (so recognizing). In *Briney*, we noted that Oregon's first concealed-weapons law was enacted in 1885 and imposed a complete prohibition on the possession of concealed weapons. 345 Or at 513. In 1925, the legislature relaxed that blanket ban to allow persons to acquire licenses to carry concealed weapons and to specify that a weapon carried openly in a belt holster was not "concealed" for purposes of the statute. *Id.* at 513-14; *see also* General Laws of Oregon, ch 260, § 5 (1925) ("[I]t shall be unlawful for any person within this state to carry concealed upon his person or within any vehicle *** any pistol[ or] revolver *** without having a license to carry such firearm[.] *** Firearms carried openly in belt holsters shall not be deemed to be concealed within the meaning of the section."). We explained that the legislature's enactment of the belt holster provision shed light on what the statute was intended to do:

> "Had the legislature intended the statutory prohibition against carrying concealed firearms to act as a general restriction on the ability to carry handguns or to serve as the ultimate protection against the use of such weapons, it would not have created, in the same provisions, an exception for firearms carried openly in a holster. The fact that it did, however, evinces a different policy rationale, *one aimed at providing notice to those who may come into contact with an individual carrying a firearm.*
>
> "That rationale—ensuring the public's ability to assess whether a person is presently in possession of a weapon—is the legislative purpose often identified with the enactment of weapons concealment statutes around the country. The Iowa Supreme Court, for example, has stated:
>
> > "'We discern the policy underlying the prohibition against concealed weapons to be based on the protection of those persons who may come into contact with

a weapon bearer. If a weapon is not concealed, one may
take notice of the weapon and its owner and govern
oneself accordingly. No such opportunity for cautious
behavior or self-preservation exists for one encounter-
ing a bearer of a concealed weapon.'

"*State of Iowa v. Rodney Newsom*, 563 NW2d 618, 619-20
(1997). *See also James Dorelus v. State of Florida*, 747 So 2d
368, 370 (1999) (Florida prohibition against carrying con-
cealed weapons aimed at preventing those with weapons
from taking 'undue advantage' of unsuspecting adversar-
ies who are not aware the person is carrying a weapon)."

*Briney*, 345 Or at 516 (emphasis added).

In short, we previously have recognized that the
history of Oregon's concealed-weapons law reveals both
a purpose—giving notice of weapons' presence, to effectu-
ate public safety—and a specific category of persons whom
the law was intended to protect—individuals who "may
come into contact with" a person carrying a gun. In turn,
the public safety objective of "ensuring the public's ability
to assess whether a person is presently in possession of a
weapon" suggests that the motive of the person possessing
the weapon is unimportant, so long as that person is acting
with the knowledge that his or her gun cannot reasonably
be observed. The public safety purpose further suggests
that an individual "who may come into contact with" the
possessor of a handgun should not need to engage in height-
ened observation to notice the gun; the statute would do
little good in ensuring notice to "the public" if the statute
demands a level of scrutiny beyond what people exercise in
everyday life.

With those considerations in mind, the shortcom-
ings of defendant's interpretation of "concealed" in ORS
166.250(1)(b) become apparent. Defendant proposes that a
handgun is not "concealed" in a vehicle so long as it can be
observed by at least one person who is in contact with, or who
may come into contact with, the gun's possessor. That con-
struction would render the statute ineffective in protecting
the people for whom the statute was designed. In the con-
text of a vehicle whose driver possesses a gun, defendant's
definition would mean that, if a passenger can see the gun,

it is not concealed, even if the gun is not reasonably observable by a person standing just outside the vehicle, such as a police officer, gas station attendant, or other person whose interactions with a driver though an open window are readily foreseeable. Such a result would privilege the passenger (who already has chosen to be in proximity to the driver and weapon) over the unsuspecting stranger who "may come into contact with" the driver. *See Briney*, 345 Or at 516; *see also Dorelus*, 747 So 2d at 370; *Newsom*, 563 NW2d at 619-20.

Context and history also undermine defendant's suggestion that a handgun is "concealed" only where the nature of its placement indicates a specific purpose of preventing discovery. Although the term "concealed" can sometimes have that connotation, reading that limitation into ORS 166.250 would make the statute inapplicable when persons act with the knowledge that their weapons are not reasonably observable—a result that would be at odds with the legislature's public safety objective.[4]

At the same time, we decline to endorse the state's definition, which proposes that a gun in a vehicle is concealed if it is "shielded from the vision of some persons who are in contact with, or may come into contact with, the vehicle." That definition lacks a meaningful limiting principle. No matter how openly a handgun is displayed within a vehicle, there are likely to be angles of view (to say nothing of distances) from which a person outside the vehicle would be unable to see it.

Given the policy rationale behind ORS 166.250 (1)(b), we conclude that the legislature intended that whether a handgun is "concealed" in a vehicle for purposes of the statute would turn on whether the placement of the gun would give reasonable notice of the gun's presence, through ordinary observation, to a person coming into contact with

---

[4] Defendant's only other argument for her understanding of "concealed" is that this court has already interpreted the term that way in *State v. Riley*, 240 Or 521, 402 P2d 741 (1965). We disagree. In *Riley*, this court concluded that probable cause of a violation of ORS 166.250 existed where a gun was placed under a car seat "indicating an effort to conceal it." *Id.* at 524. However, although *Riley* suggests that such intention to conceal may be *sufficient* to establish probable cause of a violation of ORS 166.250, the case does not purport to *require* such an intention to support a conviction under the statute.

the occupants of the vehicle and communicating in the manner typical of such a contact—such as through an open window.[5] So understood, whether a handgun is "concealed" in a vehicle will ultimately be a question for the finder of fact.

We now consider whether the evidence in this case was sufficient to support a finding that defendant's handgun was concealed—that is, whether there was evidence that a person coming into contact with the vehicle and its occupants and communicating in a manner typical of such contact would not reasonably have been able to observe the handgun.

The state presented evidence that the handgun was tucked barrel-down in the interior side pocket of the driver-side door, with the gun's handle protruding up and out of the pocket. Barrett testified that the interior pocket was located below the level of the driver's seat, and that there was an armrest between the window and the interior pocket. Hopkins testified that the gun would not have been visible from outside the car when the door was closed.[6] From

---

[5] Other courts have reached similar understandings of what "concealed" means in the context of firearms. *See, e.g.*, *Ensor v. State*, 403 So 2d 349, 354-55 (Fla 1981) (whether firearm is "concealed" is not an "absolute standard" and inquiries whether firearm is hidden from the casual and ordinary observation of another person in the normal associations of life); *People v. Schuford*, 50 Ill App 3d 408, 410-11, 365 NE2d 731, 732-33 (1977) ("concealment" contemplates only ordinary observation and requires that firearm is covered or obstructed so as to make its recognition at least difficult); *State v. Gwinn*, 390 A2d 479, 482 (Me 1978) (firearm is "concealed," even if not absolutely invisible, when it is "not discernible by the ordinary observation of persons coming in contact with the person carrying it, casually observing him, as people do in the ordinary and usual associations of life"); *Shipley v. State*, 243 Md 262, 269, 220 A2d 585, 588-89 (1966) (weapon is "concealed" if "it is so situated as not to be discernible by ordinary observation by those near enough to see it if it were not concealed who would come into contact with the possessor in the usual associations of life," although absolute invisibility is not required); *People v. Kincade*, 61 Mich App 498, 502, 233 NW2d 54, 57 (1975) (weapon is "concealed" when "it is not discernible by the ordinary observation of persons coming in contact with the person carrying it, casually observing him, as people do in the ordinary and usual associations of life," though absolute invisibility is not required (internal quotation marks omitted)).

[6] Defendant cites language in the Court of Appeals opinion that, she contends, will have the effect of proscribing handguns that are not visible for even a moment, including guns that could be seen through ordinary observation when the vehicle is stopped but will become briefly hidden from view when the car is moving. We do not interpret the Court of Appeals opinion that way. However, to the extent that that opinion could be read as defendant suggests, it would articulate a broader definition of "concealed" than the legislature intended.

that evidence, a factfinder could reasonably infer that the gun would not have been visible to a stranger engaged in an ordinary and foreseeable interaction with the vehicle's occupants, such as communicating with the driver through an open window. In short, the evidence is sufficient to support a finding that the gun was concealed. The trial court therefore did not err in denying defendant's MJOA.

We turn to the second issue that defendant raises on review: whether the trial court erred in refusing to give defendant's requested jury instruction regarding how the term "knowingly" applies to "concealed" under ORS 166.250(1)(b). Defendant asked the trial court to give the following instruction:

> "When used in the phrase 'knowingly possesses a handgun that is concealed and readily accessible within a vehicle,' *knowingly means that the person acts with an awareness that the handgun is concealed and acts with an awareness that it is readily accessible.*"

(Emphasis added.) The trial court declined that request and, instead, gave the following jury instruction:

> "When used in the phrase 'knowingly possessed a handgun that was concealed and readily accessible to her within a vehicle,' *knowingly or with knowledge means that the person acts with an awareness that she possessed a handgun that was concealed and readily accessible to her within a vehicle.*"

(Emphasis added.) Before the Court of Appeals, defendant conceded that the trial court's given instruction was legally correct but argued that her alternative instruction was preferable because it more clearly explained to jurors how the mental state of "knowingly" applied to the term "concealed" under ORS 166.250(1)(b), ruling out the possibility that jurors would misinterpret the statute. The Court of Appeals rejected defendant's argument and held that, because the trial court's given instruction was legally correct, the trial court was "not required to give an instruction that was merely an enlargement on another correct and complete instruction already given." *Harrison*, 292 Or App at 241 (citing *Laubach v. Industrial Indemnity Co.*, 286 Or 217, 225, 593 P2d 1146 (1979)). The Court of Appeals accordingly affirmed the judgment of conviction.

On review, defendant reiterates her argument that, although the trial court's instruction was legally correct, it allowed jurors to reach a legally incorrect interpretation of ORS 166.250(1)(b) in which "knowingly" does not modify "concealed." Defendant argues that the alternative instruction that he requested in the trial court would have prevented that error by more clearly indicating that "knowingly" modifies "concealed."

We conclude that no error occurred. The trial court's instruction was legally correct (as defendant concedes), differs from defendant's requested instruction only minimally, and does so regarding a subject—the requisite mental state of "knowingly"—that was not at issue under defendant's theory of the case. We ordinarily presume that jurors correctly follow their instructions, *see State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990) ("[J]urors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so."), leading us to presume here that the jurors followed the given instruction by applying ORS 166.250(1)(b) in the same way that they would have applied the statute under defendant's proposed instruction. *See Klutschkowski v. PeaceHealth*, 354 Or 150, 167, 311 P3d 461 (2013) (trial court's refusal to give party's requested instruction is not reversible error "if the substance of the requested instruction, even if correct, was covered fully by other jury instructions given by the trial court" (internal quotation marks omitted)).

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.