Argued and submitted May 4, 2022, affirmed March 29, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NICHOLAS JAMES GODDARD LEAKE,
*Defendant-Appellant.*

Tillamook County Circuit Court
19CR66602; A174457

527 P3d 1054

Defendant appeals from a judgment of conviction for unlawful possession of a firearm under ORS 166.250(1)(a) (knowingly carrying a firearm "concealed upon the person"). He contends that the trial court erred in denying his motion for judgment of acquittal (MJOA) on that charge and that it plainly erred in failing to instruct the jury that "[f]irearms carried openly in belt holsters are not concealed" within the meaning of the statute, ORS 166.250(3). *Held*: A firearm is "carried openly" in a belt holster, and therefore not "concealed" for purposes of ORS 166.250, if the holstered firearm gives reasonable notice of the firearm's presence to a person exercising ordinary scrutiny when coming into contact with the person carrying the firearm, even if the firearm is obscured by the holster itself. Applying that understanding of the statute to the evidence presented, the Court of Appeals concluded that the trial court did not err in denying defendant's MJOA. The court declined to exercise discretion to consider defendant's unpreserved claim of instructional error.

Affirmed.

Mari Garric Trevino, Judge.

Peter G. Klym, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Mark E. Seepe, Jr., Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General.

Before Shorr, Presiding Judge, and Pagán, Judge, and Armstrong, Senior Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

In this criminal appeal, defendant challenges his conviction for unlawful possession of a firearm (Count 3), ORS 166.250.[1] He contends that the trial court (1) erred in denying his motion for judgment of acquittal (MJOA) on Count 3 and (2) plainly erred by failing to instruct the jury with respect to Count 3 "that a firearm openly carried in a holster is not concealed" for purposes of ORS 166.250(1). We reject defendant's second assignment of error with limited discussion: That assignment of error is unpreserved, and, even if it met the requirements for plain-error review—a matter we do not decide—we would not exercise our discretion to consider it. *See* ORAP 5.45(1) (appellate court may, in its discretion, consider an unpreserved claim of error if the error is plain); *State v. Vanornum*, 354 Or 614, 630, 317 P3d 889 (2013) (appellate court discretion to consider plain error "entails making a prudential call that takes into account an array of considerations, such as the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice in the particular case"); *id.* at 630-31 ("Ultimately, a decision to review a plain error is one to be made with the 'utmost caution' because such review undercuts the policies served by the preservation doctrine." (Quoting *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991)). With respect to defendant's first assignment of error, as we explain below, because a reasonable juror could find on this record that defendant was not carrying the firearm openly in a belt holster, the court did not err in denying his MJOA. Accordingly, we affirm.

---

[1] ORS 166.250 provides, in part:

"(1) Except as otherwise provided in this section or [other statutes not relevant here], a person commits the crime of unlawful possession of a firearm if the person knowingly:

"(a) Carries any firearm concealed upon the person;

"* * * * *

"(3) Firearms carried openly in belt holsters are not concealed within the meaning of this section."

Defendant was also convicted of driving under the influence of intoxicants (Count 1) and reckless driving (Count 2). He does not challenge those convictions on appeal.

In reviewing the trial court's denial of an MJOA, we view the facts in the light most favorable to the state, drawing all reasonable inferences in the state's favor. *State v. Connelly*, 298 Or App 217, 218, 445 P3d 940 (2019). When the trial court's denial of an MJOA turns on the construction of a statute, we review the court's construction for legal error. *State v. Ritter*, 280 Or App 281, 285-86, 380 P3d 1160 (2016). The ultimate question is "whether any rational trier of fact, accepting reasonable inferences and making reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt." *State v. Lupoli*, 348 Or 346, 366, 234 P3d 117 (2010). We state the facts with those principles in mind.

After having two or three drinks at a bar, defendant got into his car and drove to buy a pack of cigarettes. On his way to the store, he struck a guardrail and crashed his car off the shoulder of the road. It was around 2:00 a.m. Deputy Mayne arrived at the scene and found defendant in the passenger seat of a different car. Mayne was wearing a body camera. Mayne asked defendant to get out of the car and talk to him. As defendant got out of the car, he lifted his sweatshirt to reveal a holstered handgun and asked Mayne, "[D]o you want to take that off of me?" Mayne testified that he did not see the gun before that. Footage from Mayne's body camera as well as still photographs from that footage were admitted into evidence at trial. Mayne testified that the gun was "mostly black" and that defendant was wearing a black sweatshirt with dark pants. He further testified, "[I]mmediately I saw the gun as he pulled his jacket up. So once he pulled it up, I saw that he had a gun on his belt. Or his sweater."[2] He also testified that the gun was in a belt holster. Defendant told Mayne that he did not have a concealed carry permit.[3] Mayne arrested defendant for DUII. In addition to the driving-related charges, defendant was charged with unlawful possession of a firearm.

---

[2] Defendant's outerwear is variously referred to as a sweatshirt and a sweater.

[3] *See* ORS 166.260(1)(i) (ORS 166.250 does not apply to "[a] person who is licensed under ORS 166.291 and 166.292 to carry a concealed handgun"); ORS 166.260(4) (exception listed in subsection (1)(i) is an affirmative defense to a charge of violating ORS 166.250).

At trial, after the state rested, defendant moved for an MJOA on all the charges. With respect to the unlawful possession of a firearm charge, defense counsel pointed out that defendant had immediately identified the firearm to the officer, he made no effort to hide it, and the firearm was located in a belt holster, as the officer admitted. Quoting ORS 166.250(3), defendant argued that the charge therefore failed as a "pure matter of law." The state responded that defendant was not "carrying openly" in a belt holster because the evidence demonstrates that he had to pull his sweatshirt up to show the actual firearm.

The trial court denied defendant's motion, reasoning:

"The carrying concealed, there is no doubt that he had a firearm. The question is whether there is enough evidence that it was concealed. So obviously there is no evidence of what it was like in the car before he chose to get out. But when he chose to get out, the video clearly shows him having to raise his sweatshirt in order to show the officer the firearm, which obviously was the appropriate thing to do when encountering an officer, is to tell them you have a gun.

"But there is recorded evidence of him having to lift an item of clothing to disclose that he had a firearm. So I think the jury could find that it was concealed when he talked to the officer. And the fact that he immediately had to—knew to lift his shirt. And I don't know what his shirt was like in the car before that. Maybe he was open carrying. But at least during the interactions with the officer, there is evidence to show it was concealed."

As part of his case, defendant presented testimony from his mother that, whenever she saw defendant wearing the gun, it was in a holster on his hip. The jury found defendant guilty of all charges, and he now appeals. As noted, he contends that the trial court erred in denying his MJOA on the unlawful possession of a firearm charge.

Before discussing the parties' arguments on appeal, we first note what is and what is not at issue in this case. First, the sufficiency of the state's proof as to the "knowingly" element of the offense is not before us.[4] Second, it is

---

[4] Defendant does not advance any argument in that regard on appeal, understandably so, given that the issue was not raised in support of his MJOA below. *See State v. Rennells*, 213 Or App 423, 430, 162 P3d 1006 (2007) (issue

undisputed that defendant was carrying a firearm and that he carried it in a belt-holster on his person. Third, as noted, defendant did not request the court to instruct the jury that a firearm carried openly in a belt holster is not concealed, ORS 166.250(3), and we have declined to consider the court's failure to *sua sponte* do so as plain error. Nonetheless, ORS 166.250(3) informs the meaning of "concealed" for purposes of defining the offense. *See State v. Abram*, 273 Or App 449, 455, 359 P3d 431 (2015) (explaining that subsection (3) "defines the contours of" and "provides a necessary ingredient of" the definition of the offense, because "[t]he definition of the term 'concealed' cannot be satisfied by a firearm that is carried openly in a belt holster" (internal quotation marks omitted)); *id.* at 455-56 (whether subsection (3) is an element or a properly raised defense, the state must prove beyond a reasonable doubt that the firearm was not carried openly in a belt holster).

Consequently, the question on appeal reduces to whether a reasonable factfinder could find that the firearm was "concealed upon [defendant's] person," ORS 166.250 (1)(a), considering that a firearm "carried openly in [a] belt holster[ is] *not* concealed" for purposes of the offense, ORS 166.250(3) (emphasis added). As the parties' recognize, that, in turn, requires us to determine the meaning of the phrase "carried openly in [a] belt holster[]," in particular, the words "carried openly."

Defendant argues that, under existing case law, the statutory phrase "carried openly in [a] belt holster[]" means that "a weapon carried in a holster, even if it is partially obscured by a person's clothing is 'openly carried' and is not concealed for purposes of [ORS 166.250] so long as it is partially visible at some time from some perspective." And, he contends, because part of the firearm was visible from the perspective of Mayne's body camera before defendant lifted his sweatshirt, "the gun was not 'concealed' even if the weapon was obscured by defendant's clothing in the split-second before he raised his sweatshirt to make the weapon even more visible to Mayne."

unpreserved where counsel's argument in support of MJOA did not "cogently alert the trial judge and opposing counsel to the substance of the position" argued on appeal (internal quotation marks and brackets omitted)).

The state refutes defendant's construction of the phrase "carried openly"; in the state's view, subsection (3) was intended to make clear that, "when a firearm is carried in a belt holster and is technically concealed by that belt holster, but is nevertheless recognizable as a firearm to a person exercising an everyday level of observation, that firearm is not 'concealed' for purposes of ORS 166.250." And, the state contends, defendant's photographic evidence "does not compel the conclusion that a person exercising everyday scrutiny would have recognized the gun as a firearm," thus, "a rational fact finder could reasonably find that defendant was not 'openly carrying' the firearm in a belt holster." As explained below, we conclude, based on the text, context, and legislative history of the concealed-firearms statute, that the state's understanding of subsection (3) is correct, that is, that the phrase "carried openly in [a] belt holster[]" was intended only to clarify that a firearm that is obscured by the holster itself is not concealed for purposes of the statute.

In construing a statute, we discern the legislature's intention by considering the statute's text and context, as well as any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). "Statutory context includes prior opinions interpreting the statute, as well as other provisions of the same or related statutes." *State v. Bluel*, 285 Or App 358, 362, 397 P3d 497 (2017).

Before considering the belt-holster exception, we turn first to what the legislature intended by the word "concealed" for purposes of the statute. The Supreme Court confronted that question in *State v. Harrison*, 365 Or 584, 450 P3d 499 (2019), specifically with respect to ORS 166.250 (1)(b), which provides that the crime of unlawful possession of a firearm is committed by knowingly possessing a handgun "that is concealed and readily accessible to the person within any vehicle." *Id.* at 586.

Pointing to the ordinary meaning of the word, the Supreme Court explained that an object is "presumably 'concealed' if someone has caused another person to fail to notice the object by causing it to be reasonably (even if not completely) indiscernible, including by obstructing the person's view of the object or making it less recognizable."

*Id.* at 590. The court then turned to the history of Oregon's concealed-weapons laws as context to further understand what the legislature intended by the word "concealed" in ORS 166.250. *Id.* at 591. Notably for our purposes here, the court relied heavily on the legislature's 1925 enactment of the belt-holster exception for that understanding, although subsection (3) was not directly at issue in *Harrison*.

Reiterating the evolution of Oregon's concealed-weapons law discussed in *State v. Briney*, 345 Or 505, 200 P3d 550 (2008), the court considered it significant that the belt-holster exception was enacted against a backdrop of what had been until then a complete ban on the possession of concealed weapons and therefore "shed light on what the statute was intended to do."[5] *Harrison*, 365 Or at 591 (citing *Briney*, 345 Or at 513-16; General Laws of Oregon, ch 260, § 5 (1925)). As the court had previously explained in *Briney*, by enacting that exception, the legislature evidenced a policy rationale "'*aimed at providing notice to those who may come into contact with an individual carrying a firearm.*'" *Id.* (quoting *Briney*, 345 Or at 516 (emphasis in *Harrison*)). The court reasoned, in part:

> "'Had the legislature intended the statutory prohibition against carrying concealed firearms to act as a general restriction on the ability to carry handguns or to serve as the ultimate protection against the use of such weapons, it would not have created, in the same provisions, an exception for firearms carried openly in a holster.'"

*Id.* (quoting *Briney*, 345 Or at 516).

Importantly, the court explained that "[t]he history of Oregon's concealed-weapons law reveals both a purpose—giving notice of weapons' presence, to effectuate public safety—and a specific category of persons whom the law was intended to protect—individuals who 'may come into contact with' a person carrying a gun." *Id.* at 592. And, the court observed, the law's public safety purpose "further suggests that an individual 'who may come into contact with'

---

[5] That enactment was virtually identical to what is now ORS 166.250(3). It provided, in part, that "'[f]irearms carried openly in belt holsters shall not be deemed to be concealed within the meaning of the section.'" *Harrison*, 365 Or at 591 (quoting General Laws of Oregon, ch 260, § 5 (1925)).

the possessor of a handgun should not need to engage in heightened observation to notice the gun." *Id.*

The court expressly rejected the state's proposed meaning that a gun in a vehicle is concealed "if it is 'shielded from the vision of some persons who are in contact with, or may come into contact with, the vehicle,'" because that definition "lack[ed] a meaningful limiting principle." *Id.* at 593. The court thus concluded that a handgun is "concealed" in a vehicle for purposes of the statute if the placement of the gun would fail to "give reasonable notice of the gun's presence, through ordinary observation, to a person coming into contact with the occupants of the vehicle and communicating in the manner typical of such a contact—such as through an open window."[6] *Id.* at 593-94 (footnote omitted).

Nothing in the text or context of the statute suggests that a different definition of "concealed" should apply for purposes of the specific provision at issue here—ORS 166.250(1)(a)—which is part of the same statute (indeed the same subsection of the statute) as that construed in *Harrison*. In other words, we find no reason to depart from the ordinary presumption "that the legislature intended words enacted as part of the same statute to have the same meaning throughout that statute." *Comcast Corp. v. Dept. of Rev.*, 363 Or 537, 546, 423 P3d 706 (2018). We therefore understand the meaning of "concealed" for purposes of ORS 166.250(1)(a) to be consistent with what the court instructed in *Harrison*—a firearm is "concealed" if it fails to "give reasonable notice of the gun's presence, through ordinary observation, to a person coming into contact with [the person carrying the firearm] and communicating in the manner typical of such a contact." 365 Or at 593-94.

With that in mind, we turn back to the belt-holster exception in subsection (3), beginning with the text itself. *See Gaines*, 346 Or at 171 (in construing a statute, "text and

---

[6] Under that understanding of the statute, the court concluded that the state's evidence—"that the handgun was tucked barrel-down in the interior side pocket of the driver-side door, with the gun's handle protruding up and out of the pocket," the pocket was located below the level of the driver's seat, and the gun would not have been visible from outside the car when the door was closed— was sufficient to support a finding that the gun was concealed, and it therefore affirmed the trial court's denial of the defendant's MJOA. *Id.* at 594-95.

context remain primary, and must be given primary weight in the analysis"). Again, ORS 166.250(3) provides that "[f]irearms carried openly in belt holsters are not concealed within the meaning of this section." The key phrase is "carried openly in belt holsters," in particular, the word "openly." Because it is not defined in the statute, we look to the plain meaning of the term, typically by consulting dictionary definitions. *Zweizig v. Rote*, 368 Or 79, 87, 486 P3d 763 (2021). In doing so, "it is important to use sources contemporaneous with the enactment of the statute." *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296 n 7, 337 P3d 768 (2014); *see also State v. Leslie*, 204 Or App 715, 719, 132 P3d 37, *rev den*, 341 Or 245 (2006) (consulting 1920s era dictionaries in construing meaning of "place of residence" in ORS 166.250 (2)(b), enacted in the same bill as ORS 166.250(3)). The 1921 edition of *Webster's New International Dictionary* indicates that the adverb "openly" was obsolete. *Webster's New Int'l Dictionary* 1507 (1921). However, that edition also includes the reference, "See -LY," which, the dictionary informs, "is sometimes given as the only definition of a word ending in *-ly*, if its meaning can readily be gathered from the definitions of the suffix and the root word."[7] *Id.* at 1507, 1287; *see also id.* at 1287 ("-ly" is "[a] suffix forming adverbs from adjectives, participles, and (rarely) nouns ; as in slow*ly*, bad*ly*, smiling*ly*, unexpected*ly*, part*ly*"). The most pertinent definition of the adjective "open" was "[un]covered or unprotected ; not concealed or hidden ; exposed ; bare." *Id.* at 1506.[8]

Defendant argues that the plain meaning of "openly" is therefore not helpful.[9] In his view, "carried openly in a belt holster" must mean something different than "not concealed in a belt holster," otherwise, ORS 166.250(3) is rendered meaningless. *See State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("As a general rule, we assume that the legislature did not intend any portion of

---

[7] The 1935 edition reflects the same. *Webster's New Int'l Dictionary* 1706 (unabridged ed 1935).

[8] Today's meaning is similar: The adverb "openly" means "in an open manner **:** freely and without concealment." *Webster's Third New Int'l Dictionary* 1580 (unabridged ed 2002).

[9] Defendant relies on the current definition of the word. *See* 325 Or App at 9 n 8.

its enactments to be meaningless surplusage." (Citing ORS 174.010; *Bolt v. Influence, Inc.*, 333 Or 572, 581, 43 P3d 425 (2002).)). Essentially, we understand defendant to contend that "concealed" must mean something different when a firearm is holstered than when it is not, therefore, "carried openly" must be understood to mean something different than what its ordinary meaning conveys.

We disagree that, as a textual matter, subsection (3) necessarily becomes superfluous if we utilize the plain meaning of "openly." As the state points out, the phrase instead can be understood simply to mean that a firearm carried in a belt holster that is concealed or obscured *by* the holster itself—as would typically be the case in that circumstance—is not concealed for purposes of the statute. In other words, applying the ordinary meaning of "openly," the enacting legislature could easily have intended the phrase "carried openly in a belt holster" to mean that the firearm is "uncovered" or "exposed," and not "concealed" or "hidden," by the fact of the holster itself. That reading of subsection (3) harmonizes and gives meaning to all of the provisions of the statute, as we are obligated to do where possible. *See* ORS 174.010.

Turning next to context, defendant argues that our prior case law supplies a different meaning of "concealed" that, in his view, applies with respect to holstered weapons—specifically, that a weapon is "carried openly" in a belt holster and therefore not concealed as long as it is "*partially visible at some time from some perspective.*" (Emphasis added.) He asserts that we have "repeatedly found that weapons that are only partially visible or visible under some circumstances may constitute being 'openly carried' when in a belt holster," whereas "weapons that are similarly only partially visible or visible from some perspectives may be concealed when they *are not* in a belt holster." (Emphasis in defendant's brief.)

Again, we disagree. As we explain below, defendant's attempt to tease from our case law a different understanding of "concealed" where a weapon is holstered overstates that law and is inconsistent with the legislative intention behind Oregon's concealed-weapons law.

Defendant first points to *Abram*. The issue there was whether the trial court erred in failing to give the defendant's requested jury instruction that the state must prove beyond a reasonable doubt that a firearm was not carried openly in a belt holster as provided in ORS 166.250(3). *Abram*, 273 Or App at 450. We concluded that, even if subsection (3) constitutes a defense that the state must disprove only where the defendant raises it (rather than an element that the state must prove in all cases), the defendant was entitled to the instruction because he raised the holster issue by affirmative evidence during his case-in-chief. *Id.* at 455-56. Thus, we concluded, the instruction was a correct statement of the law and supported by the evidence.

At trial, the state presented evidence that the deputy who stopped the defendant in his car did not see the gun until he "got up close" to the defendant and that the gun was under the defendant's clothing. *Id.* at 450. The defendant presented evidence that he wore the holster on his belt and that his shirt was tucked behind the gun at his waist when he got into the car that day and also when he got out. *Id.* at 450-51. *Abram* simply held that that evidence, viewed in the light most favorable to the defendant—including, as noted, the evidence that the defendant's shirt was tucked *behind* the gun at his waist—was sufficient to raise the belt-holster issue as a defense, such that he was entitled to his requested jury instruction. It did not purport to define what the legislature meant by the phrase "carried openly," nor did it hold that a firearm that was only partially visible or only visible at some angles constituted being "carried openly" because it was in a belt holster.

Defendant also relies on *State v. Johnson*, 96 Or App 166, 772 P2d 426 (1989), which involved the legality of a search that resulted in the discovery of drugs. While the officer was talking with the defendant, who was a passenger in a car, he saw a knife sheath partially covered by the defendant's jacket and reasonably suspected that the defendant might be carrying a concealed weapon. *Id.* at 168; *see* ORS 166.240(1) (making it unlawful to carry concealed, certain knives and other weapons). The officer removed the defendant from the car, seized the knife, and patted him down,

resulting in the later discovery of drugs and drug paraphernalia. The officer testified that the defendant was wearing a short leather jacket and carrying a knife in a sheath on his belt. *Id.* at 169. Noting ORS 166.250(3), we observed, "Like a gun in a holster, a knife carried openly in a sheath on the belt is not 'concealed.'" *Id.* Thus, "[o]nce the officer discovered that defendant carried his knife openly in a sheath at his waist, he no longer had reasonable suspicion, let alone probable cause, to suspect defendant of wrongdoing," and the subsequent arrest and search were illegal. *Id.*

According to defendant, *Johnson* thus holds "that a knife in a belt sheath that was partially obscured by the defendant's clothing was not concealed." That is overstating the holding in the case: *Johnson* did not consider the question whether the knife was concealed at the point where it was partially covered by the defendant's jacket; at most, that part of the opinion suggests that a weapon in a sheath but partially obscured by clothing *could be* a concealed weapon, sufficient to establish reasonable suspicion of a crime. *Id.* at 169 (the officer's 'stop and frisk' procedure was justified by the officer's reasonable suspicion that the defendant had violated ORS 166.240(1)). *Johnson* holds only that the defendant was not carrying concealed once he got out of the car. And, at that point, we highlighted the officer's testimony that the defendant "wore a short leather jacket and carried a knife in a sheath on his belt," thus suggesting that the knife in its sheath was *not* concealed by his clothing. *Id.*

In doing so, we also distinguished *State v. Walton*, 18 Or App 603, 526 P2d 458 (1974), in which the defendant carried a buck knife in a scabbard attached to the defendant's belt, which was concealed beneath his coat. Reversing the trial court's grant of the defendant's motion to suppress, we held that, having felt a hard object beneath the defendant's coat, the officer had reasonable suspicion that the defendant was carrying a concealed weapon, and, once the officer found that the defendant "was, in fact, carrying a concealed weapon, the officer could continue the search." *Id.* at 606. Contrary to defendant's view, that suggests that a weapon carried in a holster is not carried "openly" if it is concealed by clothing.

In sum, we do not understand our prior case law to provide justification for defendant's proposed rule—that a weapon is "carried openly" in a belt holster—and, thus, by definition, not concealed—as long as it is "partially visible at some time from some perspective."[10] We further note that, like the state's purported definition of "concealed" in *Harrison*, defendant's proposed meaning for "carried openly" "lacks a meaningful limiting principle." 365 Or at 593.

Having rejected defendant's argument that the statute's context leads to his proposed understanding of the belt-holster exception, we still must determine the legislature's intention with respect to the meaning of that provision. Legislative history is often helpful; however, in this case, legislative records from the 1925 enactment of the belt-holster provision are not available. *See, e.g.*, *State v. Rainoldi*, 351 Or 486, 499, 268 P3d 568 (2011) (noting that legislative records with respect to Oregon's early firearms laws, including General Laws of Oregon, chapter 260 (1925), "literally went up in smoke with the burning of the state capitol in 1935").

But, as the court recognized in *Harrison*, we can glean the intention behind the statute from its historical context. 365 Or at 591. And, as discussed in detail above, the enactment of the belt-holster provision in 1925 reveals that the legislative purpose behind the concealed-firearms statute as a whole, *including that provision*, was to "giv[e] notice of weapons' presence, to effectuate public safety," and

---

[10] Although recognizing that it is not "dispositive," defendant also references *State v. Fisher*, 100 Or App 149, 151, 785 P2d 369, *rev den*, 309 Or 522 (1990), as support for his position. In *Fisher*, the trial court determined that ORS 166.250(3) does not apply when a person is in an automobile, and it denied the defendant's MJOA for unlawful possession of a firearm for that reason. *Id.* at 152. We disagreed, concluding that "the plain language of ORS 166.250 does not make it unlawful for a person to carry a firearm openly in a belt holster, whether or not the person is riding in a motor vehicle," and the trial court therefore erred in denying the MJOA on that basis. *Id.* However, because there was "other evidence of concealment"—most likely referring to evidence that the defendant had removed the gun from his belt holster and placed it under the seat—we affirmed. *Id.* Defendant contends that *Fisher* thus "demonstrates that 'openly carried in a belt holster' means something different than 'not concealed in a belt holster' because a gun worn in holster while a driver is seated in his vehicle is necessarily not going to be visible from the outside of the vehicle." Suffice it to say that we disagree with both defendant's factual premise as well as the conclusion that he attempts to draw from it.

the specific category of persons the legislature intended to protect was "individuals who may come into contact with a person carrying a gun." *Id.* at 592 (internal quotation marks omitted). Moreover, the public safety policy underlying the statute "further suggests that an individual who may come into contact with the possessor of a handgun should not need to engage in heightened observation to notice the gun." *Id.* (internal quotation marks omitted).

Given that clear and specific legislative purpose behind the concealed-firearms law in general, we would not expect the legislature, in enacting subsection (3), to have intended to make it *easier* for a person to keep a firearm from public view and remain within the parameters of the law. We thus conclude, consistent with the plain meaning of "openly" and the legislative policy reflected in the enactment of subsection (3), that "carried openly in a belt holster" was intended to convey only that a firearm is not "concealed" simply by virtue of the fact that it is contained in—and thus covered by—a belt holster. Otherwise, the analysis of whether a firearm is "concealed" under *Harrison* remains the same. That is, consistent with *Harrison*, a firearm is carried "openly" in a belt holster, and therefore, not "concealed" within the meaning of ORS 166.250(1), if it gives reasonable notice of the firearm's presence to a person exercising ordinary scrutiny when coming into contact with the person carrying the firearm, even if the firearm is obscured by the holster. In other words, a person carrying a firearm in a belt holster is not carrying concealed for purposes of the statute if the holster obscures the firearm, as long as the holstered weapon is being carried openly—that is, it gives reasonable notice of the firearm's presence.

Finally, we must determine whether, under that understanding of the statute—and viewing the facts and all reasonable inferences in favor of the state, as we must—the record compels the conclusion that defendant was not carrying a concealed weapon. In other words, we must determine whether every reasonable jury would be required to conclude that defendant was "openly" carrying the firearm in a belt holster and therefore necessarily *not* carrying a concealed weapon within the meaning of ORS 166.250(1).

Having carefully reviewed the record through that lens—in particular the body-camera footage and still photographs from that footage—we conclude that the trial court did not err in denying defendant's MJOA. The evidence shows the presence of a dark object—what *turned out to be* the handle of a firearm in a holster—barely visible below defendant's sweatshirt as he gets out of the car. However, the contours of the object are masked by defendant's dark clothing. Nor is the holster itself reasonably discernible from the footage and photos. Mayne testified that the gun was "mostly black" and that defendant was wearing a black sweatshirt with dark pants. It is not until defendant lifts his sweatshirt that the object is *necessarily* recognizable as a firearm contained in a holster. In short, a reasonable juror could find from the evidence presented that a person exercising ordinary scrutiny in a typical encounter with defendant would not have had reasonable notice of the gun's presence and, therefore, that it was not carried "openly" in a belt holster.

Affirmed.