Argued and submitted November 16, 2018, affirmed September 16, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DONALD LEROY MURPHY,
*Defendant-Appellant.*

Washington County Circuit Court
16CR18995; A164609

475 P3d 100

A jury convicted defendant of harassment, ORS 166.065, for leaving two threatening voicemails for a Hillsboro Police Department evidence technician. On appeal, defendant challenges the trial court's denial of his motion for a judgment of acquittal (MJOA), arguing that: (1) the state did not meet its burden of adducing evidence that the victim reasonably believed that defendant would imminently carry out his threats; and (2) notwithstanding imminence, the state failed to produce evidence that it was objectively reasonable for the victim to believe that defendant would carry out his threats because they were so implausible. *Held*: Defendant failed to preserve his imminence argument, and the trial court did not err in denying the MJOA. The circumstances, nature, and context of defendant's voicemails are sufficient such that a jury could find that the victim's alarm was reasonable, notwithstanding whether defendant could actually carry out his specific threats. Although one aspect of the threat may not be feasible under the circumstances, a reasonable person could still find that the threats in this case were likely to be followed by action.

Affirmed.

Eric Butterfield, Judge.

Sarah Laidlaw, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.*

POWERS, J.

Affirmed.

––––––––––––––
* Egan, C. J., *vice* Garrett, J. pro tempore.

**POWERS, J.**

A jury convicted defendant of harassment, ORS 166.065, for leaving two threatening voicemails for S, a Hillsboro Police Department evidence technician. On appeal, defendant raises three assignments of error, two of which we reject without discussion. We write to address defendant's challenge to the trial court's denial of his motion for a judgment of acquittal (MJOA). Defendant submits two reasons why the trial court erred: (1) the state did not meet its burden of adducing evidence that S reasonably believed that defendant would imminently carry out his threats; and (2) notwithstanding imminence, the state failed to produce evidence that it was objectively reasonable for S to believe that defendant would carry out his threats because they were so implausible. As to the first argument, the state asserts that defendant did not preserve that argument for appeal, and that, therefore, we should not evaluate it on the merits. As to the second argument, the state contends that it adduced sufficient evidence to withstand an MJOA on the objectively reasonable fear of harm. As explained below, we conclude that defendant failed to preserve his first argument and that the trial court did not err in denying the MJOA. Accordingly, we affirm.

"We review the denial of an MJOA to determine whether, after viewing the facts and all reasonable inferences in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Colpo*, 305 Or App 690, 691, 472 P3d 277 (2020). We state the facts in accordance with that standard.

The Hillsboro Police Department had several items of defendant's personal property in its possession including a backpack and a laptop bag with a laptop in it. Defendant was issued a property receipt that explained that he had 90 days to pick up his property or it would be destroyed. After the 90-day deadline, the police department destroyed the backpack but did not destroy the bag containing the laptop.[1] Defendant went to pick up his property, and when he was

---

[1] The Hillsboro Police Department's protocol for disposing of computers requires that they be sorted separately from other personal property.

informed that some of his items had already been destroyed, he became "heated" and "agitated." He began yelling at S, who did not leave her secure workstation and had an officer escort defendant off the property. S testified at trial that she had "reason to believe that [defendant] might have access to a gun" because she "had received information that he had had weapons," and that "[i]t was part of his history," but she was unsure of the specifics that gave defendant access to those weapons.

Defendant, later that same day, left two "rambling" voicemails for S. In the first voicemail, defendant claimed that the "Hell's Angels are running the Washington County Jail[.]" Also in the first voicemail, defendant told S that "until you find that Nike backpack and give it to me—and you will give it to me[—]I will bring Army officers in there with heavy machine gun weaponry to bring it back to me, understand, like an M[-]16 machine gun."

Later that evening, defendant left another voicemail. He said that he was going to go to Fort Lewis and bring back army officers "armed with M-16 rifles." He also said that S had been "sentenced to death. 'Cause we're going to come in there and shoot you, okay? To kill you, okay? We're not playing games." He elaborated by saying that, "if I have to come in there with Army officers and shoot you at gunpoint wearing camouflage uniforms, then I'm going to do it, okay?" He even suggested that S was involved in "rape porn." After more rambling, defendant said "I'm saying that we're going to shoot you and if you want that to end right fucking now or be apprehended by United States Military Personnel, then I will come after you," noting that he can "legally" shoot S. Eventually, defendant concluded the call by saying: "All right, then. *** I will expect a phone call from you. If I don't hear from you within a week, I'm going to Fort Lewis, got that? Seven days."

Defendant was charged with harassment, ORS 166.065.[2] That statute provides, in part:

---

[2] ORS 166.065 has been amended several times since defendant's conduct; however, the subsections under which defendant was charged have not been amended. Because the amendments have no bearing on our analysis, we refer to the current version of the statute in this opinion.

"(1)   A person commits the crime of harassment if the person intentionally:

"* * * * *

"(c)   Subjects another to alarm by conveying a telephonic, electronic or written threat to inflict serious physical injury on that person or to commit a felony involving the person or property of that person * * *, which threat reasonably would be expected to cause alarm.

"* * * * *

"(4)   * * * [H]arrassment is a Class A misdemeanor if a person violates:

"* * * * *

"(b)   Subsection (1)(c) of this section and:

"* * * * *

"(D)(i)   The person conveyed a threat to kill the other person * * *;

"(ii)   The person expressed intent to carry out the threat; and

"(iii)   A reasonable person would believe that the threat was likely to be followed by action."

At the close of the state's case-in-chief, defendant argued that the state had failed to prove that the belief that defendant would carry out his threats was reasonable. In support of his MJOA, defendant argued that the state had failed to meet its burden:

"Specifically, that a reasonable person would believe that the threat was likely to be followed by action. * * * We know the content of the calls. Frankly, everything was so ridiculous in those calls.

"A reasonable person would not believe that [defendant] was capable of going up to Fort Lewis and getting these machine guns and coming back down with a bunch of Army rangers and doing these things.

"I would say that the * * * State has failed to meet [its] burden just based on the fact that these are such unbelievable statements that a reasonable person would not believe the person most likely to be actually be able to do that."

That was the entirety of defendant's argument; and the trial court denied the motion without explanation. A jury found defendant guilty, and defendant initiated this appeal.

On appeal, defendant now asserts, among other arguments, that a necessary element of harassment is that "a person in [S]'s position would have reasonably believed that defendant would imminently carry out the threat." The state responds that that argument is unpreserved because it is "qualitatively different than the one presented to the trial court." As explained below, we agree that defendant did not preserve the specific argument that he now advances on appeal.

As a general matter, for us to address an argument on appeal, the adversely affected party must have preserved the claim of error before the trial court. ORAP 5.45(1); *see generally Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991). That rule undergirds the concept that parties should not be blindsided on appeal and that trial courts should have the opportunity to address and correct the error in the first instance. *State v. Vanorum*, 354 Or 614, 632, 317 P3d 889 (2013); *see also State v. Smith*, 184 Or App 118, 121, 55 P3d 553 (2002) (noting that fairness and efficiency are among the underlying purposes of preservation). "As a rule, an objection as to the legal insufficiency of evidence to prove a claim on one theory does not have the effect of preserving all other possible theories of insufficiency; rather, parties must explain to the court and opposing party a specific reason for the asserted legal insufficiency." *State v. K. J. B.*, 362 Or 777, 791, 416 P3d 291 (2018); *see also State v. Taylor*, 198 Or App 460, 469, 108 P3d 682, *rev den*, 339 Or 66 (2005) ("[T]he appealing party's statements before the trial court must have alerted the trial judge and opposing counsel to the substance of the position that is advanced on appeal.").

Here, the trial court and opposing counsel were not alerted to the argument that S had to have an objectively reasonable fear that defendant would carry out his threats imminently. As noted above, defendant's argument to the trial court challenged only the believability of the threats. Indeed, defendant stated that a reasonable person would

not believe that defendant had the capability to carry out his threats and that the statements were too "ridiculous" to be believed. Importantly, defendant never mentioned the idea that the threat had to be imminent, depriving the trial court and the state an opportunity to address the claimed error. *See Vanorum*, 354 Or at 632 (noting that preservation rules afford the trial court and opposing counsel an opportunity to address the error in the first instance). Accordingly, because defendant failed to preserve the argument for appellate review, and he does not ask for plainerror review, we do not address defendant's imminence argument.

Defendant also renews on appeal his argument that the state failed to adduce evidence that it was objectively reasonable for S to believe that defendant would carry out his threats. Specifically, defendant argues that it is "objectively unbelievable" that defendant would "travel to Fort Lewis as an Army Colonel and bring back Army officers with their M[-]16 rifles to shoot" S. The state counters that "a reasonable person would believe that the threat was likely to be followed by action of some sort, notwithstanding the fact that the particular method of killing the victim—recruiting soldiers—was not feasible." (Emphasis omitted.) For the reasons explained below, we agree with the state's position.

As a general matter, to prove the crime of harassment, the state was required to prove that: (1) defendant intended to subject S to harassment, annoyance, or alarm; (2) defendant conveyed the threat; (3) S was actually alarmed by the threat; and (4) S's alarm was objectively reasonable. *See State v. Rogers*, 301 Or App 393, 397-98, 457 P3d 363 (2019) (citing *State v. Moyle*, 299 Or 691, 698, 705 P2d 740 (1985), and describing elements of *former* ORS 166.065(1)(c) (2017)[3]). Here, the thrust of the dispute centers around the fourth element: the reasonableness of S's alarm. *See Moyle*, 299 Or at 699 ("[S]uch alarm must be reasonable in the circumstances.").

---

[3] After the Supreme Court decided *Moyle*, the legislature added to ORS 166.065 the provision at issue in this case: that a "reasonable person would believe that the threat was likely to be followed by action." Or Laws 2009, ch 783, § 1. Defendant does not challenge the constitutionality of that change or argue that it is incompatible with *Moyle*.

In *Moyle*, the Supreme Court addressed a challenge to the harassment statute under Article I, section 8, of the Oregon Constitution.[4] The court noted that the harassment statute, as it then existed,

"requires neither proof of a specific intent to carry out the threat nor of any present ability to do so. However, the elements—actual alarm and the reasonableness of the alarm under the circumstances—have a similar purpose and effect. These elements limit the reach of the statute to threats which are so unambiguous, unequivocal and specific to the addressee that they convincingly express to the addressee the intention that they will be carried out."

*Id*. at 703. The *Moyle* court also noted that threats that fall under the harassment statute do not include

"the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee."

*Id*. at 705.

The Supreme Court later examined *Moyle* in *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999). At issue in *Rangel* was the constitutionality of Oregon's criminal stalking statute. 328 Or at 297-98. Although the stalking statute (as well as the harassment statute in *Moyle*) proscribed speech-based contacts, the court explained that a narrowing construction would preserve the statute from an overbreadth challenge under Article I, section 8, of the Oregon Constitution. *Id*. at 306. The court in *Rangel* explained that, "[a]ccording to *Moyle*, a proscribable threat is a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts."[5] *Id*. at 303. In making that assessment, we view the contacts under the totality of the circumstances. *See, e.g.*, *D. W. C. v.*

---

[4] Article I, section 8, of the Oregon Constitution provides: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

[5] Although *Rangel* clarified a portion of *Moyle*'s holding by adding a "fear of imminent violence" to the definition of a threat, we need not address that change today because defendant did not preserve any challenge to the imminence requirement.

*Carter*, 261 Or App 133, 141, 323 P3d 348 (2014) (explaining that, in the context of a stalking protective order, "it is often necessary to view contacts in context in order to determine whether they give rise to objectively reasonable alarm"); *Pinkham v. Brubaker*, 178 Or App 360, 372, 37 P3d 186 (2001) ("As we have emphasized in other cases, unwanted contacts must be considered in the context of the parties' entire history. So viewed, contacts that might appear innocuous when viewed in isolation often take on a different character.") (Internal quotation marks and citation omitted.).

Here, the circumstances, nature, and context of defendant's voicemails provide sufficient evidence for a reasonable factfinder to conclude that S's alarm was objectively reasonable under that standard. First, S knew of defendant's history with weapons. Second, the circumstances of defendant's threats—that is, his escalating reaction to learning that he was unable to retrieve his property—provides context to assess whether S's alarm was reasonable. Before defendant left the voicemails, S had an in-person interaction with defendant where he became agitated and angry, and began yelling at S. His behavior was so unsettling to her that he had to be forcibly removed from the building. That encounter provides important context for voicemails that defendant left for S later that day.

The nature of the voicemails also provides a basis to infer the objective reasonableness of S's alarm. Defendant makes much of the "rambling" nature of defendant's voicemails, noting that they are "imaginative" and "incoherent." We understand that argument to be that, because the threats were so incoherent, it was not objectively reasonable for S to be alarmed at the multiple threats on her life made in the voicemails the same day as her encounter with defendant. To be sure, portions of defendant's threats could be viewed as having an imaginative or unrealistic quality. That conclusion, however, does not necessarily mean that S's alarm based on the threats to her life was objectively unreasonable. Defendant's threats, when viewed in context, allow a reasonable trier of fact to conclude that S's alarm was objectively reasonable.

Importantly, the statute at issue in this case does not require that the victim's alarm manifest directly from the literal statements made in any given threat. It is sufficient that the threats create an unequivocal fear of imminent and serious personal violence from the speaker that is objectively likely to be followed by unlawful acts. Thus, although aspects of defendant's threats may not have been feasible under the circumstances, a reasonable person could still anticipate that his threats in this case were likely to be followed by action. That is, the objective reasonableness of S's alarm is not measured based only on whether it is reasonable to infer that defendant would actually go to Fort Lewis and acquire firearms or other individuals to kill S. As the state points out, in response to a very specific and rapidly escalating conflict, defendant made repeated threats to shoot S or have her shot. Those threats, viewed in the context of defendant's encounter with S, are sufficient for a factfinder to conclude that S's alarm that defendant would act on his threats was objectively reasonable. Therefore, the trial court did not err in denying defendant's MJOA.

Affirmed.