No. 260 April 24, 2024 195

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DONALD LEROY MURPHY,
aka Donald L. Murphy,
*Defendant-Appellant.*
Washington County Circuit Court
22CR05920; A178272

Ricardo J. Menchaca, Judge.

Submitted October 3, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Marc D. Brown, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Erica L. Herb, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Defendant appeals a judgment of conviction for four counts of criminal trespass in the second degree, ORS 164.245.[1] He assigns error to the trial court's denial of his motion for a judgment of acquittal (MJOA) on each count. Defendant argues that because the verbal order excluding him from public property did not "provide any process to challenge the exclusion order[,]" he was deprived of his "right to procedural due process." According to defendant, that deprivation rendered the verbal exclusion order unlawful, and as such, he argues that it cannot serve as the basis for any of the trespassing charges. But defendant has failed to identify a constitutionally protected interest that is affected by his exclusion from the property. We, therefore, affirm.

We review the denial of an MJOA to determine whether, viewing the evidence in the light most favorable to the state, "a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). We state the pertinent facts consistently with our standard of review.

For about six months, the manager of a post office branch received frequent complaints from customers that defendant was sleeping in the lobby and blocking access to their post office (P.O.) boxes. This particular post office branch is open 24 hours a day for customers to check their P.O. boxes and ship outgoing mail and packages after hours. In the mornings, the manager would ask defendant to leave, and for a time, defendant would peacefully comply. Eventually, defendant began refusing to leave, and, on one occasion, he lunged at the manager and threatened to kill him.

After defendant stopped peacefully leaving, the manager contacted law enforcement and requested that defendant be directed not to return to the property. On January 31, 2022, a sheriff's deputy responded to a call from the post office branch advising that defendant had returned

---

[1] ORS 164.245 provides, in part:

"(1) A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully in a motor vehicle or in or upon premises."

to the post office property despite having been verbally directed not to return. The responding deputy confirmed through the sheriff's office "report systems" that two days earlier defendant had been verbally directed by another deputy not to return to the property. The responding deputy then cited defendant for trespass. On February 1, 2, and 4, defendant was again cited for trespassing at the same post office branch.

At trial, the responding deputy testified that a standard verbal exclusion order would include an explanation to the individual that they are no longer allowed on the property and that if they return, they may be subjected to criminal citations and arrest. After the state rested, defendant moved for a judgment of acquittal arguing that the state had not carried its burden to prove that he had remained on the property "unlawfully."[2] He argued that his exclusion from that particular post office branch infringed on his "fundamental liberty interest in traveling upon and accessing places that are open to the public." According to defendant, before the state could lawfully deprive him of that right, procedural due process entitled him to "some type of adequate process by which to challenge" his exclusion from that post office, and because the verbal order directing him not to return did not describe an appeals process, it was not a lawful order. The trial court denied defendant's motion. A jury found defendant guilty on all counts.

On appeal, defendant asserts that the trial court erred in denying his MJOA, arguing, as he did below, that his exclusion from that particular post office branch violated his liberty interest in accessing public property. The state responds that defendant does not have "a protected liberty interest in having unlimited access to public spaces." In the state's view, because defendant "did not use the post office for a legitimate purpose," his exclusion from the property did not infringe on any constitutionally protected interest.

---

[2] ORS 164.205 provides, in part:

"(3) 'Enter or remain unlawfully' means:

"* * * * *

"(c) To enter premises that are open to the public after being lawfully directed not to enter the premises[.]"

Defendant adds, for the first time on appeal, that the exclusion infringed another fundamental liberty interest: the right to petition the government for redress of grievances. The state contends that defendant failed to preserve that argument, and that even if he had, the exclusion did not infringe his right to petition the government for redress "because the evidence established that he had only an 'abstract need or desire' to enter the post office" to exercise that right.

We first address the issue of preservation and conclude that defendant did not preserve the argument that the exclusion from that particular post office branch infringed on his right to petition the government for redress. "In the context of a motion for a judgment of acquittal, an objection as to the legal insufficiency of evidence to prove a claim on one theory does not have the effect of preserving all other possible theories of insufficiency; rather, parties must explain to the court and opposing party a specific reason for the asserted legal insufficiency." *State v. Cassidy*, 331 Or App 69, 73, 545 P3d 203 (2024) (internal quotation marks omitted). Nevertheless,

> "The touchstone for determining whether a contention is adequately preserved is whether the policies that underlie the preservation requirement—giving the opposing party a fair opportunity to respond, fostering appellate review through full development of the record, and giving the trial court the opportunity to fully consider and rule in the first instance—have been served in a particular case."

*State v. Ames*, 298 Or App 227, 232, 445 P3d 928 (2019).

In the trial court, defendant cited and relied heavily on *State v. Koenig*, 238 Or App 297, 242 P3d 649 (2010), *rev den*, 349 Or 601 (2011), to argue that a verbal exclusion order that provides no appeals process cannot pass constitutional muster. Although we held that the exclusion order in that case infringed on the defendant's right to petition the government for redress, *id.* at 310, that is not the reason defendant gave the trial court for his reliance on that case. Because defendant did not specifically assert the right to petition the government for redress of grievances, neither the trial court nor the prosecutor had the opportunity to

consider, respond to, or rule on that contention. We reject that argument as unpreserved.

We next address defendant's preserved argument that the exclusion from the post office branch infringed on his right to access public property.[3] In determining whether the state has violated an individual's procedural due process rights, we engage in a two-part inquiry that asks (1) whether state action deprived the individual of a protected interest, and if so, (2) what process the individual was due. *Logan v. Zimmerman Brush Co.*, 455 US 422, 428, 102 S Ct 1148, 71 L Ed 2d 265 (1982). As to part one of that inquiry, the Fourteenth Amendment to the United States Constitution protects the fundamental right to intra- and inter-state travel. *See Papachristou v. City of Jacksonville*, 405 US 156, 164, 92 S Ct 839, 31 LEd 2d 110 (1972) (providing that walking, loitering, and wandering are unwritten rights that are "historically part of the amenities of life as we have known them" and which "giv[e] our people the feeling of independence and self-confidence"); *Kent v. Dulles*, 357 US 116, 126, 78 S Ct 1113, 2 L Ed 2d 1204 (1958) (describing the "freedom of movement" as "deeply engrained in our history" and "basic in our scheme of values"); *Williams v. Fears*, 179 US 270, 274, 21 S Ct 128, 45 L Ed 186 (1900) ("[T]he right to remove from one place to another according to inclination, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of any State is a right secured by the Fourteenth Amendment and by other provisions of the Constitution."); *Josephine Co. Sch. Dist. v. OSAA*, 15 Or App 185, 196-97, 515 P2d 431 (1973) (recognizing that the Fourteenth Amendment protects the right to intrastate travel). The liberty to travel is also understood to protect the freedom to remain in a public place for lawful purposes. *See Chicago v. Morales*, 527 US 41, 53-54, 119 S Ct 1849, 144 L Ed 2d 67 (1999) ("[T]he freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment. *** Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement ***.").

---

[3] Because defendant challenges the verbal exclusion order under the federal constitution, and not under the Oregon constitution, we limit our review accordingly.

The constitutional right to access public property, however, does not confer an unlimited right of access. *City of Eugene v. Gannon*, 294 Or App 819, 822-23, 432 P3d 1141 (2018), *rev den*, 364 Or 535, *cert den*, ___ US ___, 140 S Ct 128 (2019); *see also, e.g.*, *Vincent v. City of Sulphur*, 805 F3d 543, 548 (5th Cir 2015) (explaining that although Supreme Court precedents establish "a general right to go to or remain on public property for lawful purposes," none clearly establishes that "a person under investigation for threatening deadly violence against city officials has a right to notice and a hearing before being banned from entering city buildings"); *Catron v. City of St. Petersburg*, 658 F3d 1260, 1267 n 5 (11th Cir 2011) (holding that there is "a private liberty interest in lawfully visiting city property that is open to the public" but noting that the right to use city parks "is not absolute" and applies "under the ordinary conditions in which these parks are made available to the general public").

We held in *Gannon* that "while a university campus may be open to the public, it does not follow that [a u]niversity must allow all members of the public onto its premises regardless of their conduct." 294 Or App at 823 (internal quotation marks omitted). In that case, the defendant received a notice of trespass after he was found sleeping in a locked building on the University of Oregon's campus. *Id.* at 820. He returned to campus in violation of that order on four separate occasions and received citations for criminal trespass. *Id.* at 821. On appeal, we rejected the argument that the notice violated his procedural due process rights because the defendant failed to identify "a constitutionally protected interest that is affected by the notice." *Id.* at 822. We explained that although the university is publicly owned, "the public does not have unlimited access to its campus." *Id.* at 822-23. Moreover, universities serve an educational mission and must foster an environment which furthers that mission; accordingly, while universities by no means have unlimited discretion to exclude, they may reasonably regulate the conduct of nonstudents on campus whose conduct is not otherwise protected by the constitution. *Id.* at 823-24 (discussing *Souders v. Lucero*, 196 F3d 1040, 1044 (9th Cir 1999), *cert den*, 529 US 1067 (2000)).

Defendant contends that *Gannon* is distinguishable because in that case, the defendant was not a university student and he entered a locked building, while in his case, defendant was excluded from a building "open to the public with unlimited access to anyone who chose to enter." But the fact that the post office branch is open 24 hours a day does not mean that access by members of the public is unlimited. Twenty-four-hour access simply allows the public to conduct certain postal business outside regular business hours. The fact that the doors remain unlocked throughout the night does not open the premises to the public for non-postal purposes.

Defendant was not in the post office lobby to transact postal business. He was sleeping in the lobby and blocking people's access to their mailboxes. When asked to leave, defendant became hostile and threatened harm. He does not have a protected liberty interest that entitles him to enter and remain on the premises of that post office branch under those circumstances. Having thus failed to identify a fundamental liberty interest affected by the exclusion order, the trial court did not err in denying defendant's MJOA.

Affirmed.