150 December 26, 2024 No. 949

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID LAUREN MANN,
*Defendant-Appellant.*

Lane County Circuit Court
22CR22304; A180844

Erin A. Fennerty, Judge.

Argued and submitted October 30, 2024.

Peter G. Klym, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and DeVore, Senior Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant was convicted, after a jury trial, of harassment, ORS 166.065,[1] and disorderly conduct. ORS 166.025. The charges arose after an incident in which defendant accidentally grazed the cheek of his 15-year-old daughter, L, with his fist as he forcibly restrained her after she stepped between defendant and L's adult brother, whom defendant intended to punch. Defendant challenges his conviction for harassment, raising three unpreserved assignments of errors. For the reasons explained here, we conclude that the trial court did not commit plain error and therefore affirm.

The offense of harassment requires that the person act with the specific intent to harass another person. ORS 166.065(1)(a).[2] The offense can be committed by "[s]ubjecting such other person to offensive physical contact." *Id*. Defendant correctly notes that, under the statute and our case law, to establish the offense, the state must prove that the defendant had the specific intent to harass or annoy another person. *See State v. Murphy*, 306 Or App 535, 540, 475 P3d 100 (2020), *rev den*, 367 Or 559 (2021) (so stating). Focusing on the grazing of L's cheek, defendant asserts in his first assignment that the trial court erred in convicting him of the offense. He reasons that the evidence is insufficient to establish that he acted with the intention of subjecting L to offensive physical contact, because he had no intention to harm L; rather he had intended to make contact with L's adult brother. We have reviewed the record in the light most favorable to the state and conclude that the evidence is sufficient to permit the jury to infer that, in forcibly restraining L, defendant acted with a statutorily sufficient intention to harass her. The trial court therefore did not

---

[1] ORS 166.065 provides, in part:

"(1)  A person commits the crime of harassment if the person intentionally:

"(a)  Harasses or annoys another person by:

"(A)  Subjecting such other person to offensive physical contact[.]"

[2] To prove the crime of harassment, the state was required to prove that: (1) defendant intended to subject L to harassment, annoyance, or alarm; (2) that defendant conveyed the threat; (3) that L was actually alarmed by the threat; and (4) that L's alarm was objectively reasonable. *See State v. Murphy*, 306 Or App 535, 540, 475 P3d 100 (2020), *rev den*, 367 Or 559 (2021).

plainly err in failing to acquit defendant based on a failure of the state produced sufficient evidence to prove that defendant intended to harass or annoy L.

We move on to defendant's second assignment of error. In rebuttal closing argument, in addressing defendant's claim of self-defense, the prosecutor made this comment:

> "I believe in the evidence testimony from everyone who has appeared here today, even [defendant], there was not any kind of use of physical force or imminent use of physical force that was going to be made against [defendant][.]"

In his second assignment of error, defendant contends that that statement constituted vouching for witnesses and that the trial court plainly erred in failing to *sua sponte* declare a mistrial.

For error to be plain, it must be "obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). It is not obvious and is reasonably in dispute whether the prosecutor's statement—"I believe in the evidence *** there was not any kind of use of physical force"—was a comment on credibility. In the context in which it was made, the statement reasonably appears to have been simply a summation of the testimony. We conclude that there was no plain error.

We turn to defendant's third assignment of error, which is also not preserved. As noted, a person commits the crime of harassment if the person "intentionally *** [h]arasses or annoys another person by *** [s]ubjecting such other person to offensive physical contact." ORS 166.065(1)(a)(A). In his third assignment of error, defendant contends that, in closing argument, the prosecutor misled the jury as to the *mens rea* element of the harassment charge by suggesting that the state was required to prove only that defendant acted volitionally, not that he acted with the specific intent to harass L. Defendant cites the prosecutor's description to the jury of the "intentional" mental state element of the offense:

"A person acts intentionally when they act with a conscious objective cause a particular result. Again, I just want to stress for this that the State is not arguing and the State is not required to prove that [defendant] intended to hit [L] that he intended to injure [L], that he intended to—in—*in essence, understanding his intention of what he meant to do is not what—is not what the State has to prove.*

"*What the State has to prove is that there was offensive physical contact that a reasonable person may find offensive in the situation as [L] was in the situation.*

"And I believe that you can see from the testimony that was provided and the evidence that has come out of this trial, and that that conduct was intentional, that he did intend to make it. *And while it wasn't what he intended to be, it didn't seem like he had a good amount of control over what he was doing at that time. He made contact repeatedly, that was unwanted and offensive to [L]*."

(Emphases added.) Defendant did not object to the prosecutor's argument or raise a concern at that time that the prosecutor had misstated the elements of the offense. But defense counsel did explicitly explain to the jury that it was the state's burden to show that defendant intended to harass the victim. And in rebuttal, the prosecutor agreed with defense counsel's description of the *mens rea* element but then placed emphasis on the "offensive physical contact" element:

"[T]he Defense mentioned specifically about the intention portion of the harassment statute that he had—that he had to intend to harass or annoy [L]. And as the instructions tell you, that is correct.

"However, what it will also tell you is that what the State has to prove is that the Defendant harassed or annoyed [L] by subjecting [L] to offensive physical contact. He did not have to intend to harass or annoy her in the typical way that one would hear harass or annoying. He did not have to go up with the intention of making a rough contact. He didn't have to go off with the intention of making—"

Defendant objected at that point, arguing not specifically that counsel had misstated the *mens rea* element but that, generally, the prosecutor had mischaracterized the law:

"Your Honor, we object to that on the grounds of mischarac-terization of the law."

The court understood defense counsel's objection to relate to the element of intent and responded with an instruction:

"[T]he jurors *** are to follow the directions that have been given by the Court, that intentionally or with intent means that a person acts as a conscious objective to cause a particular result or to engage in particular conduct. And that the phrase intentionally, harass, or annoy, that inten-tionally and intended means that a person acts with a con-scious objective to harass and annoy.

"And that what used in the phrase intended the contact with [L] to occur, intended means that the person acts with a conscious objective for the contact with [L] to occur. That is the statement of the law."

The prosecutor then endorsed the court's instruction and responded:

"And I would agree with that fully. Thank you, Your Honor. What I'm asking you to consider in that is the conscious objective to make contact. It does not have to be a specific kind of contact, it does not have to be what he perceived to be necessary, willing, wanted contact on his part. It has to be consciously—he had the conscious objective to make contact at that time. And it was offensive physical contact as a reasonable person would consider in this situation."

On appeal, defendant contends that the whole thread of the prosecutor's comments implied to the jury that it need only find that defendant acted volitionally, not that defendant acted with the specific intent to harass or annoy L.

We have reviewed the entirety of the prosecutor's closing argument. We agree with defendant that several of the prosecutor's statements—for example, that "under-standing [defendant's] intention of what he meant to do is not what—is not what the State has to prove"—could con-vey that the state need not prove that defendant intended to harass L at the time he acted. That is incorrect, as the state did have that burden. But that is not all that the prosecutor said. The prosecutor herself twice emphasized that the jury needed to find that defendant intended to harass or annoy

L. At the beginning of her closing argument, the prosecutor described the elements of the offense:

> "The State \*\*\* is trying to prove and believe it has proved through the testimony that you have heard that the Defendant harassed or annoyed [L] by subjecting [L] to offensive physical contact. That the Defendant intended [the] contact with [L] to occur, and that the Defendant intended to harass or annoy [L]."

And in rebuttal, the prosecutor noted:

> "[T]he Defense mentioned specifically about the intention portion of the harassment statute that he had—that he had to intend to harass or annoy [L]. And as the instructions tell you, that is correct."

The challenged comments, viewed in context, appear to have been the prosecutor's effort not to diminish the state's burden to establish an intention to harass, but to focus the jury's attention on the "offensive physical contact" element of the offense—to point out that the contact need not have been what is commonly viewed as "harassment," but need only have been subjectively and objectively offensive. *Murphy*, 306 Or App at 540. Additionally, after defendant's objection, the court clearly instructed the jury, as it previously had, that the state had the burden to prove that defendant had an intention to harass or annoy L. And in her responsive argument, defense counsel also clearly stated that it was the state's burden to prove that defendant intended to harass L. In short, the jury heard several times the correct statement of the law on the element of intent—that it was the state's burden to prove not only that defendant acted volitionally, but that he acted with an intention to harass L. When viewed in the context of the entire closing argument and especially given the trial court's clarification of the burden of proof during rebuttal, we conclude that, had defendant made a motion for mistrial, it would not have been an abuse of discretion to deny it. Thus, there was no plain error. *State v. Pierpoint*, 325 Or App 298, 309, 528 P3d 1199 (2023). However, even assuming that the asserted unpreserved error occurred and that it was not harmless, we conclude that the interests of justice do not require us to overlook the strong policies requiring preservation and

exercise our discretion to correct the asserted unpreserved error. *See State v. Wiltse*, 373 Or 1, 14-15, ___ P3d ___ (2024); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (listing considerations in determining whether to exercise discretion).

Affirmed.